IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Maritza Meszaros Reyes, | ) | C/A No.: 3:12-cv-298-JFA |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | FINDINGS OF FACT |
| | ) | AND |
| Harry Lee Langford Jeffcoat, | ) | CONCLUSIONS OF LAW |
| | ) | |
| Respondent. | ) | |
| | ) | |

I. FACTUAL AND PROCEDURAL BACKGROUND

This matter arises out of a child custody dispute between the Petitioner, Maritza Meszaros Reyes ("Petitioner" or "mother"), and the Respondent, Harry Lee Langford Jeffcoat ("Respondent" or "father"). On January 21, 2012, Petitioner commenced this suit by filing a Verified Petition for Return of Child to Petitioner and for Issuance of Show Cause Order. (ECF No. 1). Respondent filed a Motion to Dismiss and an Answer on February 17, 2012. (ECF Nos. 15 & 16). Petitioner then filed an Amended Verified Petition (ECF No. 19) on March 5, 2012, and Respondent answered on March 19, 2012.

Petitioner and Respondent are married and have three children together. Petitioner and Respondent have filed divorce proceedings in Venezuela and in the United States, respectively. Both proceedings have been stayed while this court decides the issue raised in the Amended Verified Petition (hereinafter "the Petition"), which was filed pursuant to the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention"). In the Petition, Petitioner alleges that on or about September 12, 2011,

1

Respondent wrongfully retained two of their children in the United States.[1] Based on the alleged wrongful retention of the children, Petitioner requests, among other things, that this court issue an order directing the prompt return of the children to their habitual residence, which she alleges is Caracas, Venezuela. In his Answer, Respondent denies that he has wrongfully retained the children in the United States. In the alternative, Respondent asserts affirmative defenses to Petitioner's claim.

This court scheduled a bench trial to commence on June 13, 2012. Over the course of the ensuing four day trial, the court heard testimony from a variety of witnesses, including live witnesses who came from both the United States and Venezuela, witnesses by videoconference from Venezuela, and the Petitioner and the Respondent, themselves. This court additionally took *in camera* testimony from all three children of the Petitioner and the Respondent.

After receiving the testimony, carefully considering all the evidence, weighing the credibility of the witnesses, reviewing the exhibits and briefs, and studying the applicable law, this court makes the following Findings of Fact and Conclusions of Law pursuant to Fed. R. Civ. P. 52. The court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

---

[1] The Hague Convention applies only to children under the age of sixteen. In this case, only two of the parties' children are under the age of sixteen. The oldest child is seventeen and therefore not subject to the Hague Convention.

## II. FINDINGS OF FACT

1. The Petitioner and Respondent were married in Venezuela in 1993. They have three children—an oldest son, born in 1994; a daughter, born in 1996; and a youngest son, born in 2000.

2. All three children have dual citizenship. They are Venezuelan citizens by virtue of their birth in Venezuela. They are United States Citizens by virtue of their father's United States citizenship. The children hold valid passports from both Venezuela and the United States.

3. Petitioner is a citizen of Venezuela. Since 2003, she has held a United States Permanent Resident Card (also known as a green card), which she uses each time she enters the United States. The Petitioner has made no effort to relinquish her green card.

4. Respondent is a citizen of the United States. Between 1992 and 2003, he possessed a Venezuelan resident visa, allowing him to permanently reside in Venezuela. That visa expired in 2003. The Respondent has taken no action to renew that visa and has not been authorized to live or work in Venezuela since 2003. Each time Respondent has entered Venezuela since 2003, he has entered as a tourist and has been prohibited from staying in Venezuela for longer than 90 consecutive days.

5. The family resided in Venezuela from 1993 until 2001. The Respondent was employed in Venezuela from 1993 to 2000. The Petitioner has remained continuously employed in Venezuela, except for a two-year period beginning in 2001

when the Respondent took a job in South Carolina and Petitioner took a "leave of absence" from her employment. In 2001, the family moved to South Carolina.

6. Between 2001 and 2011, all three children spent substantial amounts of time in both the United States and Venezuela. They participated in various activities, including educational, religious, social, musical, and athletic endeavors while present in each country.

7. Since 2006, the Petitioner has owned a large apartment in Caracas, Venezuela, and, since 2008, the Petitioner and the Respondent have jointly owned a large house in Lexington, South Carolina. Both properties are capable of being a home for the entire family.

8. Between 2006 and 2008, the father and children resided in Lexington, South Carolina. During this time, the children attended school at Heritage Christian Academy ("Heritage") in Lexington, South Carolina. The parties' daughter began attending Heritage in the 2005-2006 school year. Both the daughter and the youngest son attended Heritage for the full 2006-2007 and 2007-2008 school years.

9. Beginning in September 2008 and continuing until September 2011, the father and the children frequently traveled between the United States and Venezuela. Specifically, they spent about a week during October, several weeks around Christmas, a couple of weeks around Easter, and approximately three months during the summer in Lexington, South Carolina. The remainder of the time was spent in Caracas, Venezuela. The father and children never spent more than 90 consecutive days in Venezuela. The only time that they spent more than 90 consecutive days in the United States was from

June 9, 2011 until September 12, 2011, the time period immediately preceding the date on which the mother alleges that the wrongful retention began.

10. Since 2008, the children have been homeschooled through the South Carolina Association of Independent Home Schools ("SCAIHS"). Mostly, the children have worked on their studies in Caracas, Venezuela; however, educational activities also took place while the children were present in Lexington, South Carolina.

11. Between September 2008 and September 2011, the children regularly traveled between the United States and Venezuela, using their United States passports when entering and exiting Venezuela and the United States. When they entered Venezuela, the children entered as tourists.

12. In October 2009, the parties renewed the three children's United States passports. The renewal applications for the United States passports listed the Lexington, South Carolina address as the children's permanent address. In May 2011, the parties renewed the daughter's and the oldest son's Venezuelan passports. The renewal applications for the Venezuelan passports listed the Caracas, Venezuela address as the children's current residence.

13. Since 2008, the children have been covered by a United States based health insurance plan through the mother's employer. The children's primary pediatrician and dentist are located in South Carolina. The children have received pediatric and dental care in Venezuela. The children's only orthodontist and eye doctor are located in South Carolina. They have never received orthodontic or ophthalmologic care in Venezuela.

14. After 2008, and on more than one occasion, the Petitioner expressed a desire to purchase different types of property in and around Lexington County, South Carolina for the purpose of providing a residence for her mother or providing for family residences for her children in the future.

15. The children indicate that they consider themselves Americans and wish to remain in the United States.

III. CONCLUSIONS OF LAW

The court concludes, pursuant to Fed. R. Civ. P. 52, that:

1. The Hague Convention was drafted to provide a set of rules for courts to follow in international child abduction cases—its stated purpose is to "protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence." The Hague Convention does not address the ultimate issue of custody of the children, but rather where (i.e. in what jurisdiction) the custody decision will be made. Hague Convention, art. 1(b) and *passim*.

2. The Convention applies to cases where a child under the age of sixteen years has been wrongfully retained in a country other than his or her country of habitual residence. Because only two of the parties' children are under the age of sixteen, this court only makes a determination as to whether those two children were wrongfully retained by the Respondent on or about September 12, 2011. In this section, "the children" should be construed to refer to only the two children who are under age sixteen. Although the determination of the oldest child's habitual residence could be the same as

that of the younger two children, this court makes no determination of the oldest child's habitual residence.

3. Both the United States and Venezuela are signatories to the Hague Convention. The United States has implemented the Hague Convention through the International Child Abduction Remedies Act ("ICARA"). 42 U.S.C. §11601 et seq.

4. To present a prima facie case under ICARA, a petitioner must prove by a preponderance of the evidence that the children have been wrongfully retained within the meaning of the Convention. 42 U.S.C. § 11603(e)(1)(A). Under the Hague Convention, a removal or retention is "wrongful" if:

   a. it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and

   b. at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for removal or retention.

Hague Convention, art. 3.

5. In order for this court to issue an order directing the return of the parties' two children to Venezuela, the petitioner must prove a prima facie case of wrongful retention. However, even if Petitioner is able to prove the Respondent has wrongfully retained their children in the United States, Respondent has a number of available affirmative defenses that, if proven, would prevent this court from directing the return of the children to Venezuela.

6. To prove a prima facie case of wrongful retention, the Petitioner must show the following:

(1) the parties' two younger children were "habitually resident" in Venezuela at the time Respondent retained them in the United States;

(2) Respondent's retention of the children was in breach of Petitioner's custody rights; and

(3) Petitioner had been exercising her custody rights at the time Respondent retained them in the United States.

7. "The framers of the Hague Convention left 'habitual residence' undefined, and intended that the term be defined by the unique facts in each case. Federal courts have developed a two-part framework to assist in the habitual residence analysis." *Maxwell v. Maxwell*, 588 F.3d 245, 251 (4th Cir. 2009). Under the two-part framework, courts evaluate the following:

(1) shared parental intent – whether the parents shared a settled intention to abandon the former country of residence; and

(2) acclimatization – whether there was an actual change in geography coupled with the passage of an appreciable period of time, one sufficient for acclimatization by the children to the new environment.

*Id.*

8. With regards to shared parental intent, federal courts have cautioned that "'the representations of the parties cannot be accepted at face value, and courts must determine [habitual residence] from all available evidence.'" *Id.* at 252 (quoting *Gitter v.*

*Gitter*, 396 F.3d 124, 135 (2d Cir. 2005)). Federal courts have considered the following factors as evidence of parental intent: parental employment in the new country of residence; the purchase of a home in the new country and the sale of a home in the former country; marital stability; the retention of close ties to the former country; the storage and shipment of family possessions; the citizenship status of the parents and children; and the stability of the home environment in the new country of residence. *Id.* at 252.

9. The question of acclimatization "'is not simply whether the child's life in the new country shows some minimal degree of settled purpose,' but whether the 'child's relative attachments to the countries have changed to the point where [ordering the child's return] would now be tantamount to taking the child out of the family and social environment in which its life has developed.'" *Id.* at 253–54 (quoting *Mozes v. Mozes*, 239 F.3d 1067, 1081 (9th Cir. 2001). With regards to the acclimatization of the children, courts have considered the following: school environment; participation in social activities; the length of stay in the relative countries; and the child's age. *Id.* at 254.

10. If this court determines that Petitioner has proven a prima facie case of wrongful retention, then the children's return to Venezuela should be ordered unless Respondent is able to show one of the following:

by clear and convincing evidence, that

    (1)    there is a grave risk that the children's return to Venezuela would expose them to some physical harm or some intolerable situation; or

    (2)    return of the children to Venezuela would not be permitted under fundamental principles of human rights and fundamental freedoms;

or by a preponderance of the evidence, that

> (1) this action was not commenced within one year of the wrongful retention of the children and the children are well-settled in the United States; or
>
> (2) Petitioner was not actually exercising her custodial rights at the time of removal and essentially acquiesced.

*Miller v. Miller*, 240 F.3d 392, 398–99 (4th Cir. 2001).

11. This court finds the facts of the instant case distinguishable from those of other cases were federal courts have explored the habitual residence of children under the Hague Convention. Specifically, because this family was a family of considerable means, many of the factors that federal courts consider in determining habitual residence (both those under shared intent and acclimatization) are unhelpful in the analysis of habitual residence in this case. It is clear from the facts presented to this court that the parties' children had full and active lives in the United States and in Venezuela. The parties had very nice homes in both countries, and the facts show that the children spent considerable time in both places throughout their lives.

12. The following facts support the mother's argument that as of September 12, 2011, the parties' children were habitually resident in Venezuela:

- the mother, the sole provider of the family since 2006, is employed as an attorney in Venezuela and is only licensed to practice in Venezuela;

- between September 2008 and September 2011, the children completed the majority of their homeschool activities while physically located in Venezuela; and

- between September 2008 and September 2011, the children's time in the United States was during times traditionally considered holiday/vacation.

13. The following facts support the father's argument that as of September 12, 2011, the parties' children were habitually resident in the United States:

- the children lived and attended school in South Carolina from 2006 to September 2008;

- the children participated in a South Carolina homeschool curriculum;

- the father was prohibited from remaining in Venezuela for more than 90 consecutive days;

- since 2008, the children always entered Venezuela as tourists using their United States passports; and

- the children's primary pediatrician and dentist are located in South Carolina, and the children's only eye doctor and orthodontist are located in South Carolina.

14. The following facts do not resolve the issue of habitual residence but show that the parties' children had full and active lives in both the United States and Venezuela:

- from September 2008 to September 2011, the children spent nearly equal amounts of time in both the United States and Venezuela;
- the children participated in educational, athletic, musical, religious, and social endeavors in both the United States and Venezuela;[2]
- the Lexington house and the Caracas apartment were both large, expensive homes, and either could serve as a permanent residence for the family.

15. In balancing all of these facts, this court resolves the issue of habitual residence in favor of the father and finds that since approximately 2006, the children's habitual residence has been the United States. From 2006 to September 2008, the parties' children attended brick and mortar schools and participated in extracurricular activities in Lexington, South Carolina. Based on these facts and others, this court finds that the United States was the children's habitual residence at that time. In September 2008, when the family began a pattern of staying in Venezuela from September to October, from November to December, from January to March or April, and from March or April until June, the children's habitual residence did not change from the United States to Venezuela. Importantly, although the children stayed in Venezuela for an appreciable period of time from September 2008 to September 2011, they continued to travel in and out of Venezuela as tourists using their American passports. Also, their father, who

---

[2] The testimony at trial included detailed testimony about extra-curricular activities—such as piano lessons—that did not favor one side or the other. In other words, while in the United States, the children took piano lessons, and while in Venezuela, they took piano lessons. The court's failure, in this order, to mention such relatively minor factors does not mean that they were not considered, but that they were, for the most part, offsetting factors.

12

administered their homeschool lessons, entered Venezuela as a tourist and was prohibited from staying in Venezuela for more than 90 days at a time. As such, neither the father nor the children were ever present in Venezuela for 90 consecutive days or more during the three-year period from September 2008 to September 2011. This court finds that it may have been the mother's intent for her family to move to Venezuela in September 2008; however, this court finds that the father did not share her intent, and the children's pattern of travel and their activities from September 2008 to September 2011 were not sufficient to establish Venezuela as their new habitual residence. Thus, from September 2008 to September 2011 the habitual residence of the children remained the United States.

16. Because the children's habitual residence was the United States in September 2011, the Respondent could not have wrongfully retained the children in the United States as alleged by the Petitioner in the Petition. Therefore, Petitioner has failed to show the required prong of wrongful retention that the parties' two younger children were habitually resident in Venezuela at the time Respondent retained them in the United States. Accordingly, this court hereby finds that Petitioner has not proven a prima facie case of wrongful retention.

17. Because this court finds that the Petitioner has not proven wrongful retention of the parties' children by the Respondent, it is not necessary to consider the affirmative defenses that the Respondent has raised in this case.

## ORDER AND CONCLUSION

Because Petitioner has not proven that the parties' two younger children were wrongfully retained in the United States, this court declines to issue an order directing that those children be returned to Venezuela. Additionally, the court declines to order attorneys' fees in this case.

IT IS SO ORDERED.

June 27, 2012
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge