IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Maritza Meszaros Reyes, | ) | C/A: 3:12-298-JFA |
| | ) | |
| Petitioner, | ) | |
| vs. | ) | ORDER ON PETITIONER'S |
| | ) | MOTION TO ADMIT INTO |
| Harry Lee Langford Jeffcoat, | ) | EVIDENCE ATTACHMENTS |
| | ) | TO AMENDED PETITION |
| Respondent. | ) | |
| _____ | ) | |

This case came before the court for a nonjury trial upon the petition of Maritza Meszaros Reyes, seeking a declaration that respondent, Harry Lee Langford Jeffcoat, had wrongfully retained the parties' two minor children in the United States and that Venezuela, not the United States, was the "habitual residence" of the children pursuant to the Hague Convention and the International Child Abduction Remedies Act ("ICARA"). 42 U.S.C. §11601 et seq. In an order dated June 27, 2012, this court disagreed with the petitioner, determining that the respondent had not wrongfully retained the children and that the United States was the habitual residence of the children involved in this case.

PROCEDURAL HISTORY

Both parties predicted that the bench trial of this case would require three days. Acting upon that advice, this court scheduled a criminal trial to follow immediately upon the conclusion of the bench trial in this case. Unfortunately, the parties' predictions proved to be inaccurate: Four days were required for the trial of this case. The court then took a recess,

1

began its criminal trial, then interrupted the criminal trial for closing argument in this case. Moreover, because the oldest of the two minor children involved in this case was to reach her sixteenth birthday on July 1, 2012, petitioner asked that this court render its decision sometime prior to that date, so as not to lose jurisdiction over that child.

After the court rendered its decision adversely to the petitioner, the petitioner filed a timely motion to alter or amend the judgment suggesting, among other things, that the court had neglected to rule upon one set of evidentiary submissions advanced by the petitioner during her case-in-chief. The petitioner is obviously correct that the court did not make a definitive ruling on the submission,[1] and this order shall serve to memorialize the court's ruling on the disputed evidence.

## DISCUSSION

At issue is the petitioner's effort to have the court consider, for its truth, all of the documents appended to the amended petition filed in this case. It is the petitioner's position that the Hague Convention, taken together with International Child Abduction Remedies Act, 42 U.S.C. § 11601 et seq., the implementing legislation for the Hague Convention, render these documents admissible without further inquiry. As will be seen below, the court is constrained to disagree, and, in any event, had the evidence been admitted, it would not have affected this court's ultimate conclusion in the case.

---

[1] The court's failure to rule upon the disputed evidence was due, at least in part, to the compressed court schedule occasioned by the trial running longer than predicted, coupled with the moving party's somewhat unclear assertions as to what the designated evidence would tend to prove in this case.

2

Near the end of her case-in-chief, the petitioner offered "the amended verified petition" in evidence. (Tr. at 528). Respondent objected, suggesting that "it contains hearsay within hearsay." *Id*. When pressed further, petitioner's counsel suggested that "under the Hague Convention and under ICARA, the petition and the attachments are admissible." *Id*.

Respondent suggested that the Hague Convention merely provides for a waiver of all authentication requirements but does not render documents admissible simply because they are attached to the petition filed under the Hague Convention. The court then attempted, unsuccessfully, to elicit from the petitioner the general essence of the information contained in the disputed attachments. The court asked, "Are some of these attachments some of the same things I've heard evidence about such as piano lessons and electric bills and things such as that, or is it new matter that we have not heard about yet?" *Id*. at 531. Counsel responded that the attachments included redacted birth certificates and travel arrangements for the hotly disputed September 12, 2011 trip from the United States to Venezuela. There then followed more discussion about the extent to which the Hague Convention modifies evidentiary rules in this court, and the court again asked, "What is it in there that is helpful to this case? Tell me what's in there that would be helpful." *Id*. at 535. Counsel then responded that it would help the court take judicial notice of the law giving his client the right of custody in this case, and suggested that respondent had argued that the petitioner had not strongly protested when the children were forbidden, by the respondent, from returning to Venezuela on September 12.

There then followed an extended discussion, for a second time, over whether the Hague Convention and its enabling legislation waived authentication requirements in federal courts or waived evidentiary issues altogether.

Faced with uncertainty over what the law provided, and with additional uncertainty as to exactly what the attachments to the petition would prove, and with the upcoming criminal trial looming, the court indicated it would take the matter under advisement.

When the case came before the court again for closing arguments (which, as indicated above, occurred in the midst of this court's conducting of a criminal trial), respondent raised the issue again, and the court once again deferred ruling on the issue. Unfortunately, in the court's order finding for the respondent, the court did not rule on the question of whether the documents appended to the petition should be admitted in this case.

This issue was broached at oral argument on the motion to reconsider, counsel for the petitioner indicated that what was really at issue on this particular evidentiary point was attachments in the form of emails back and forth between the parties which would go to show that the petitioner had strongly objected to the respondent's forbidding the children to leave the United States on September 12, and that the petitioner vehemently complained to the respondent, in several sharply written emails, about the respondent's conduct.

As an initial matter, this court's review of both the Hague Convention and ICARA yields the conclusion that the respondent is correct as to the legal matter presented. ICARA provides that documents attached to the Hague Convention petition need not be

4

authenticated, but it does not indicate that all such documents are therefore automatically admissible. And, while it could be argued that the emails between the parties would be admissible in any event either as an admission by a party opponent or a hearsay statement admissible under the state of mind exception of Rule 803(3), there are other portions of the email that contain, as respondent suggests, hearsay within hearsay, and the court is not aware of any authority that would admit these second level hearsay statements.

In any event, because the court heard this case nonjury, the court was required to briefly view the emails in dispute. The court has no hesitation in indicating that even if the emails had been admitted, the ultimate decision would not have been different. In other words, in fashioning its decision, the court assumed that the petitioner strongly and vociferously objected to the withholding of the children in September, 2011 and promptly took action in Venezuela to commence divorce proceedings in that country. The court ascribed no fault to the petitioner for dilatory conduct in seeking to enforce her rights under the Hague Convention. Thus, the omission of the disputed emails played no part in the court's decision because the court assumed the facts in this case to be consistent with the emails.

CONCLUSION

Accordingly, the respondent's objection to the documents attached to the verified amended petition is sustained. Thus, the court denies, in part, petitioner's motion for reconsideration. The court will issue a separate order on the remaining issues raised in the

5

motion for reconsideration.

    IT IS SO ORDERED.

September 12, 2012                       Joseph F. Anderson, Jr.
Columbia, South Carolina             United States District Judge